SELYA, Senior Circuit Judge,
dissenting.
I am in complete agreement with Judge Howard’s cogent and articulate dissent, and I join it unreservedly. Nevertheless, I write separately to express my regret that, in taking far too narrow a view of the Settlement Act, the majority gives short shrift not only to the interests of the State of Rhode Island but also to the carefully calibrated arrangements crafted between the State and the Tribe.
We previously have made clear that the touchstone in resolving jurisdictional disputes between the State and the Tribe is the full effectuation of the parties’ intent. See Narragansett Indian Tribe v. Rhode Island, 449 F.3d 16, 22, 25 (1st Cir.2006) (en banc). Yet, today, the majority sets aside the parties’ intent in favor of a wooden reading of one subsection of the Settlement Act. See ante at 34 (“By its terms, section 1708(a) applies state law only to the 1800 acres of ‘settlement lands.’ The Parcel is not part of the settlement lands.”).
Despite the artful draftmanship of the majority opinion, the provision on which it relies cannot be wrested from its historical context and read in a vacuum. The Settlement Act, when taken together with the extinguishment of all Indian claims referable to lands in Rhode Island, the Tribe’s surrender of its right to an autonomous enclave, and the waiver of much of its sovereign immunity, see Narragansett Indian Tribe, 449 F.3d at 22, 24-25, suggests with unmistakable clarity that the parties intended to fashion a broad arrangement that preserved the State’s civil, criminal, and regulatory jurisdiction over any and all lands within its borders. Therefore, the Settlement Act logically and equitably should be read to prohibit any unilateral action that would upset this hard-bargained and delicate jurisdictional balance.
The Secretary’s taking of an after-acquired parcel into an unrestricted trust is just such an event. It strains credulity to surmise, as does the majority, that the State would have made such substantial concessions — including the transfer, free and clear, of 1800 acres of its land — while leaving open the gaping loophole that today’s decision creates.
The majority admits that this case is “in many ways a proxy for the State’s larger concerns about its sovereignty,” ante at 20, including the State’s understandable worry that the Tribe will use this parcel (or future parcels that might be acquired and placed into trust) for activities that would be forbidden under State law and anathema to a majority of the State’s citizens. At oral argument, the Secretary of the Interior and the Bureau of Indian Affairs appeared to disclaim any vestige of responsibility for the State’s concerns. Despite this disclaimer and “the genuineness of the State’s sense that its bargain has been upset,” ante at 38, the majority turns its back on the State.
In my view, this is error — and error of the most deleterious kind. The majority, without anything approaching sufficient justification, is engaging in pointless literalism and forcing the State to rely on the faint velleity that the Secretary will use caution in the exercise of his responsibilities in connection with the Parcel. While *52 “hope” is the official motto of Rhode Island, the State should not be force-fed hope in place of rights for which it has bargained.
As Indian tribes evolve in modern society, old legal rules tend to blur. The controversy that divides our court today is vexing and of paramount importance to both the State and the Tribe. Thus, the issue — as well as the underlying principles of Indian law — doubtless would benefit from consideration by the Supreme Court. That is a consummation devoutly to be wished. In the meantime, however, there is too much at stake to allow the Tribe, with the contrivance of the Secretary’s taking the Parcel into trust, to walk away from an arrangement that it helped to fashion and from which it has benefitted over the years.
I respectfully dissent.